That's right. I had to find my way. Good morning, Your Honors. May I please record Robert Salzman on behalf of the government. May I please request four minutes for rebuttal. Thank you very much, Your Honor. Your Honors, we are pleased to have the opportunity this morning to address an issue that has been a difficult one for prosecutors and defense attorneys and judges in this circuit for many years regarding the standard of review in a particular type of case, drug conspiracy cases. Now as we arrive here today, the law really is not in dispute. I don't think there's any dispute among the parties that the government in a drug conspiracy case must prove beyond a reasonable doubt that the defendant knew the object of the conspiracy. And it's also undisputed that the government may present circumstantial or direct evidence or only circumstantial evidence. What our dispute has been about with regard to this line of cases is the standard of review on appeal. Now the standard of review is that this court must accept all inferences, all reasonable inferences that support the verdict. And if any rational jury could find guilt, the verdict must be affirmed, even if there are reasonable or equally reasonable opposing inferences. This court, the Supreme Court has dictated that, and this court has been faithful in every manner of criminal prosecution in applying that standard of review, except in this small handful of cases involving drug conspiracy. But this small handful has had a significant effect in charging decisions, in compelling district judges to engage in very difficult exercises, in reconciling the opinions of this court, and in statements of judges of this court in trying to reconcile the opinions. The time has arrived, we respectfully request, Your Honor, to clear the area here and to make clear that the standard of review dictated by Jackson v. Virginia applies to drug conspiracy cases as it applies to every other type of case. And then to apply that standard to the facts of this case. Now my esteemed friend, Mr. Warren, in his supplemental brief says, well, there's really been no dispute about the law. He says, for example, this is not about the so-called equipoise cases. Those are the mistaken statements of many courts going back many years where the inferences are in balance, where there are equally reasonable inferences of innocence and guilt. The court must accept the inference of innocence. It's been rejected by the Supreme Court, by this court, and courts in the Ninth Circuit recently are getting around to eliminating that from their jurisprudence. But at the same time that Mr. Warren says that, just a few pages later, he says that in this case, the evidence is equally consistent with the possibility that the defendant believed he was transporting some other form of contraband, citing the Wexler case. And that's exactly the problem. When this court has said in its handful of decisions that it could have been stolen computer chips, it could have been jewelry, it could have been money, that's a violation of the standard of review. Because the answer always is yes. It could have been chips. It could have been money. He could have thought it was jewelry or who knows what. But the fact is where a jury may reasonably infer that he knew it was drugs, the verdict must be affirmed to be faithful to the standard of review. The defenders in their amicus brief say there's no problem at all here, that this en banc should be dismissed as improvidently granted. We completely disagree. This court has itself noted in Borea and in Claxton that its precedent is not consistent with the vast majority of circuits. And this is an opportunity for which we are grateful to clear this up. And then when we get to Caraballo-Rodriguez's case, these principles become very clear. Mr. Caraballo-Rodriguez took a flight from Puerto Rico with $33 in his pocket, no checked luggage, no carry-on bag. His only job was to get off the plane and pick up two suitcases off the carousel that contained 25 kilograms of cocaine. Any reasonable jury looking at those facts can conclude that no one would trust him with $2.5 million worth of cocaine unless he knew what was in there and they could trust him to do what they had asked him to do, as opposed to taking off with the loot or going to the police once he did realize what was in the suitcases. And similarly, a jury can infer that no reasonable person would get on that plane with two suitcases he didn't pack without either knowing or being willfully blind as to what's in those suitcases. So applying the correct standard of review here leads to the conclusion that the verdict must be affirmed. Is it possible he thought it was something else? Is it possible that he thought it was computer chips? Anything is possible, but that is not the standard. And in fact, those inferences that have been suggested in some of the cases tend to be the more absurd inferences and no reasonable jury is required to adopt it. It's very interesting in looking at these cases, and as you know, I've litigated many of these over the years, that these inferences that are suggested on appeal are never argued to a jury. When you look at the closing argument, you won't see any suggestion that it could have been computer chips or jewelry. Well, if you don't think a jury would buy it, then it's inappropriate to suggest that to a court of appeals to vacate a jury verdict. I'm happy to answer any questions of the Court. Is there a distinction in looking at Wechsler in the line of Wechsler cases? There is a distinction. Wechsler, the defendant, was charged with a specific controlled substance, not conspiracy to distribute a controlled substance. He was charged with hashish. Etowah was charged specifically with heroin. So in that context, it doesn't make sense to say if you're going to charge him with conspiracy to distribute hashish, you've got to prove that he knew it was hashish, not grass or something else. And the same with Etowah. Was there a difference in the way you charged from when Wechsler and Etowah were indicted as to now, because now you simply say conspiracy to distribute a controlled substance without naming that controlled substance? I don't believe that's true, Your Honor. Actually, it's the government's practice to always describe the particular substance. So in this case, it would say – It's described, but the charge is conspiracy to distribute. And the act is either controlled substance, as in the later cases and in this case, or – and I looked at the cases again this morning. Wechsler specifically was conspiracy to distribute hashish. Etowah was conspiracy to distribute heroin. I don't think it hurts you. It helps you. But it's a way of distributing the cases. It does. I haven't looked at the charging documents in Wechsler and Etowah. I would be surprised if they're different from what's been our longstanding practice, I can say personally, since long before Etowah, which is we charge conspiracy to distribute a controlled substance, that is cocaine, heroin, whatever. This Court's precedent is that the government does not have to prove the defendant knew the particular controlled substance. In a charge like that, the government has to prove that he knew it was a controlled substance and then, of course, prove to the jury that there was a controlled substance. So I would welcome the distinction, but I'm not sure that we can support it. To clarify, you say the government does not have to prove knowledge of the specific illegal objective of a conspiracy? It does. It has to prove the specific objective, which is to distribute a controlled substance. What it doesn't have to prove is knowledge of the specific type of controlled substance. And the defense hasn't disputed that. So as long as you prove that there was – you have to prove that there was – there were drugs in the suitcase. Correct. But not the specific drug, not that it was cocaine or heroin. Well, correct. In terms of knowledge, we don't have to prove it was cocaine or heroin. Given that there was a charge here of the amount, which is an apprendee factor that has to be decided by the jury, the jury has to decide the exact type of substance and the quantity. But what this case is about, this appeal is about, is knowledge. Mr. Zeisman, there has been described a so-called tension in some of our cases. But I'm wondering if that's a tension between results in the cases or whether it's a tension in actually expressed legal principles. Your Honor, I don't – I think there is tension in the results. And I agree. Then how do you write that opinion? How do you clean that up, given the fact that what we're talking about is something that is an extremely fact-sensitive area? It is. And the way to clean it up, Your Honor, I would suggest – I can't write the Court's opinion, but would be to say – Try for rehearsal purposes. It is a loving death. Thank you. I welcome that invitation. The opinion should say that the standard of review that applies in this case is the same as in all other cases, and that reasonable inferences that support the verdict must be accepted. Why is this not just a mind-run, circumstantial evidence case? Because the cases that have reached other results, specifically Adobu, Cartwright, Zavala, and there are others, those cases really cannot be explained unless there was some additional burden on the government in those cases that is incorrect. That – and a great example of that, Your Honor, is the Claxton decision of this Court last year. In Claxton, that was a divided opinion in which this Court had to grapple with these many cases and figure out a way to reconcile them. And you had, I believe it was Judge Jordan who wrote the opinion and carefully went through all the opinions and came up with a distinction. And then Judge Cowan, just as faithfully, writes a dissent in which he says, no, I'm looking at our cases and they may be different from other circuits, but there are cases and they do require an additional factor to show knowledge. Well, if judges of this Court are forced to go through this exercise, and Judge Roof in this case and many other cases, it's time to clean it up and just make it clear. Going forward, absolutely, it will still be a fact-specific inquiry. But clear it up how? To say that there is no specific test? There is no additional burden? It's all, as Judge Smith said, circumstantial evidence? That's right. To say that there is no specific additional proof of knowledge required, that the Court will consider all evidence direct and circumstantial and decide whether there is any reasonable inference that supports the verdict, even if there are equally reasonable inferences the other way. So back to Judge Smith's question, you would like an opinion that just disavows the cases you don't like, right? It disavows the inferences from those cases, yes. And then applies what should be the correct standard of review to this case. But we don't have a beef with our standard of review, really, as enunciated, right? I don't have a beef. It's not like the way we apply it in some cases. Well, yes and no. I don't have a beef with the standard of review, but the reason there's tension is because there are these cases that can be read, and Judge Cowan, for example, most recently read it that way in Claxton, can be read to suggest that that's not the standard of review. I think that's why the Court appropriately took this case in bank and can now make things clear. You're arguing we should do what we say and do what we do. We recite the standard, but then we don't apply it in a way that is consistent with Jackson. And I think you're arguing, look, just do what you say you're doing and don't do something which is more demanding and precise than you say is required. That's right. And there are specific statements in the cases like it. Let's take Edowu, for example, the need to be rejected. Edowu, for example, says it could have been computer chips or money or whatever. That suggests that equally reasonable inferences have to be accepted to acquit the defendant. That needs to be eliminated. Edowu says- Mr. Salzmark. Yes, ma'am. Mr. Salzmark, aren't you really arguing for the any rational juror test? I mean, isn't that the bedrock of sufficiency of the evidence? And isn't really that the test that we should be applying and that perhaps we've lost our way not applying? Yes, Your Honor, that is the test, and more specifically the Supreme Court last year in Coleman v. Johnson reversing a decision of this court. Coleman v. Johnson expressed that as looking to see whether the finding of the jury, quote, was so insupportable as to fall below the threshold of bare rationality. So what we're looking for here, Judge Randall, is whether the jurors were barely rational. And then when we apply it to Caraballo-Rodriguez, we say, of course. I mean, how could a reasonable juror not see that nobody's trusted to carry $2.5 million worth of cocaine who doesn't know what's going on? Mr. Salzmark. Doesn't it come down to the trusting of the jury once they've been instructed as to the law and the evidence? We usually presume that they follow that instruction. That's right, because fundamentally ours is a jury system. The Constitution has made the choice. That it's the jury of fellow citizens who makes a decision as to guilt or innocence. And this court's role as an appellate court is limited. This court's role is to make sure that there's not an exceptional case in which the jury simply went off the rails, was irrational. All right. Can we explore that, then? Yes, sir. Let's assume that Mr. Caraballo was traveling from Switzerland. Right. Why wouldn't it be more likely it would have been bearer bonds or jewels rather than drugs? That would take away one of the factors, that it's not a source city. But the overwhelming factor that you would have to eliminate, I think, before I would change my position and not even charge the case, is the quantity that's involved. That's the factor. Because when you have $5 million worth of cocaine that's being entrusted to these two people, and Caraballo Rodriguez is the only one who is left alone for any period of time with it, that shows the level of trust from which a jury can infer that he knows what's happening. So you're asking a point of fact to infer from a third party's state of mind what can then be inferred from the defendant's state of mind. Yes, but that's all. Is that, in fact, the exercise you're engaging in? Well, no. That's only one of many elements here. But yes, that's part of it. What are the purposes of that piece of evidence? Sure. Dea Diaz is the other gentleman, and he says, I talked to the same people at the same time. I was getting $5,000. I knew when I picked up the suitcase it had drugs. But he also said, I've done this many, many times before. Dea Diaz was a regular. He's a repeat performer. But we don't know anything like that about this fellow. Is there no such thing as a blind mule in the government's world? Well, the expert said no. The expert said in this circumstance, and this is a man who's been an agent for 20 years, he's never seen a blind mule in this circumstance. But that goes to the weight of the evidence, Your Honor, is the answer. So your argument would be? What circumstance would there be when you wouldn't have? It seems that based on what the agent said, there never would be a blind mule because you could always infer, because there were a little or a lot of drugs in whatever receptacle the defendant had, it was reasonable inference to say he had to have known it was drugs. It seems like every – there's no possible circumstance where someone could be carrying a valise that you couldn't argue there's so much drugs in there they had to have known. Well, two answers to that. One is the agent did give examples, such as where a friend is asked at the airport to carry a bag. The friend says, I don't want to pay for the second checked bag. Could you carry this for me? That would be an example of where you could have a blind mule. Well, let me ask you – let's play with that hypothetical. So why wouldn't you argue that if it was the same valise that had $5 million worth of drugs, you'd say, well, he had to have known. Why would he trust this fellow with $5 million worth of drugs if he didn't know? Yeah, we could say that, and I think that would be a good – that's the argument in the Ninth Circuit case. So then you don't have an instance where – No, but I do. The large quantity becomes a very difficult fact to get around. If you have a smaller quantity, then I think you could. What defects you're talking about, Your Honor, are the pseudosquad case from the Ninth Circuit, which this court in Caminos said was a blatant example of willful blindness, where you had a large amount of person asked to carry a suitcase. And the other point I just have to make, again, though I know Your Honors understand it, is that even having this discussion of competing inferences is not the right discussion before this court. When I'm saying a large amount means you're not going to trust $5 million to somebody and somebody else says, well, why not? That's the jury argument. That is the issue that's commanded to the jury. But we have to at some point, unless you want us to just ignore the idea that there's a point at which inferences descend below the rational, we have to ask about the inferences, don't we? We have to say, you know, is that a – could a fair-minded person infer that reasonably, or is it just sheer speculation? Yes, you do. But the thing not – So how do we get there? Help us draw that line. I will do that. The thing not to do is to say what are the other possible inferences. The thing to do is to exclusively look at the inference which the jury drew, which is – I have a hard time with that when you say don't look at the other possible inferences. If the very issue that you're wrestling with is, is this a reasonable inference or is it sheer speculation, don't you have to address the other possible inferences from the evidence? I don't think so, Your Honor, because what we have here – Then how do you know? Well, here's what we have. I'm suggesting to you that if somebody by himself carries $2.5 million worth of cocaine from baggage claim left by – on his own to go to another spot in the complex, that a jury can infer from that that he's trusted and he knows. But wait a second, Justice Osbert. You just said a few minutes ago in response to Judge Hardiman's question that if this person were traveling from Amsterdam, that would alter the calculus. Switzerland. And implicitly you're acknowledging that in that sense – Not Amsterdam. There's a difference. Switzerland, not Amsterdam. Switzerland. There are other inferences for Amsterdam. I was thinking of jewels. If you guys from Wilmington, we can excuse you. If you're thinking of diamonds, if you're thinking of bear bonds, if you're thinking of the things my colleagues apparently are thinking of, these are other things that you could – that you seem to be admitting or acknowledging. Hey, wait a second. If they're coming from that location instead of this location, there's another inference that's possible. Why isn't that exactly what a reviewing district judge and a reviewing court of appeals has to do? Because what the Supreme Court says is you must take the inferences supporting the verdict. The inference that supports the verdict is no one is trusting – But they're reasonable. That's reasonable. They're reasonable inferences. Correct. Correct. Absolutely. At the heart of this entire inquiry is one of reasonableness. At some point this court is being asked to make reasonableness determinations. Are we not? Yes, sir. But in the context of deciding was the jury's decision barely rational. You look at the inference that I have suggested, which is that somebody is not trusted to carry it, and if a reasonable jury could reach that and not be irrational, the verdict must be affirmed. Judge, we got a question a while ago that never got out. Go ahead. I assume your argument would be the same without Dia Dia's involvement. Absolutely. Let me ask you about the willful blindness situation. We've said that willful blindness means the defendant himself was subjectively aware of the high probability of the fact in question, not merely that a reasonable man would have been aware of the probability. Are you satisfied with that? Yes. Yes, we are, Your Honor. And here, willful blindness is very important. It was not. And how does it play out? Well, it was not instructed in any of the earlier cases. The way it plays out is that Mr. Caravaglio Rodriguez took this flight, and I actually think about this personally because the fact is, I'm directly from this argument. I'm going to my daughter's college graduation, and I'm taking a flight this afternoon, and if I were on my way to the airport and someone came up to me and said, you know, there are going to be two suitcases on that plane you're taking this afternoon, and don't worry about it. We'll put them on the plane. But when you get to baggage claim, you get off and just pick them up, and there will be somebody there to tell you what to do with them. Well, and here's $5,000. Or any amount of money, or no money. If I don't take steps.  I'll let the Attorney General know, Your Honor. If I don't take steps to find out what's in those suitcases, either by calling the police or by calling the airline, and I get on that plane, it's one of two things. Either I'm insane, or I'm willfully blind. I have a very good idea of what's in those suitcases, and I have consciously decided not to find out. What's your good idea of what's in there? Well, one inference is that I know what actually happens to be in there. This Court in Camino. That could be a bomb in there. Yeah, that could be either a contraband or a bomb. Right. But this Court in Camino's looked at the same circumstances from Suda's point, and called that case blatant, a blatant example of willful blindness. We have a blatant example of willful blindness in this case, and that was an error the District Court made in dismissing it. Isn't your argument essentially that the test that we currently have can work, provided that the appellate court does not act as a 13th juror and go back and weigh the evidence as would a jury? That's exactly right. And all we're asking this Court to do is sweep away some of the underbrush, but then continue to play its role in looking at the facts of individual cases, Caraballo-Rodriguez being the first. But where in any of our cases have we said anything to the contrary, legal principle-wise, as Judge Ambrose's question has just said? That's what's made this so troubling, which is that the Court has not explicitly said it. So there's some inconsistent results. No, but then when courts later try to explain a case like Idowu, we have cases like Berea and Claxton saying, it looks like we were requiring more because there's no other way to explain it. So again, your underbrush is the cases you don't like. You'd like us to restate it and disavow these other cases? Of course. That's the reason that we're here. Is not the key here the expert witness testimony that was presented? The expert witness testimony is very important, thank you, Your Honor, which is the expert says that he's interviewed who knows how many drug traffickers, and you don't give this to somebody who doesn't know what's going on because that person could just take off once he realizes what's happening or go to the police. And specifically, is not the expert witness testimony critical with respect to the willful blindness? Absolutely, which means that if he doesn't take steps to find out, he's willfully blind. The district court said it's not going to allow the expert testimony to tip the balance. That's incorrect. This was admitted evidence. It could be considered by the jury. The Supreme Court said in McDaniel v. Brown, one of the recent Supreme Court decisions in 2010 taking a lower court to task for not following the standard of review, McDaniel v. Brown said you have to consider all admitted evidence, even if it was inadmissible, even if there should have been an objection. Now, this testimony was admissible. There was nothing wrong with it. What was the expert testimony relevant? It was relevant to knowledge. This court in Watson and Davis, cases which we think are correct, has said an expert can testify as to the ordinary practices and knowledge of drug traffickers as long as he or she does not draw the ultimate inference and say, therefore, I think that guy over there knew that there was an argument for that. So would your arguments be the same without the expert testimony? Excuse me? Would your arguments here be the same if there had been no expert testimony? It would. It's just another one of the factors like the source city and everything else, but I don't think it's dispositive or essentially necessary. Mr. Zauser, one question about the weight of the suitcases. What's the inference that can be drawn from the weight of the suitcases? Well, the inference is Dea Dia said that the minute he picked it up, these, by the way, were small carry-on kind of suitcases, the kind that will fit in an overhead compartment. He said the minute he picked this up, he knew it was drugs. The trooper said the same thing. The trooper who pulled over the car on the highway said, this isn't closed. Dea Dia's was cross-examined. The defense theory, what they tried, was to say, well, it could have been cash. Well, no one's a better expert on that than Dea Dia's because he's been transporting cash also, and he said, no, cash is not as heavy. But I don't get the inference there. I want to go back to what Judge Hardiman asked you, and I know that you want us to stay away from inserting different facts, and then we'll get back to obviously what Judge Fischer is asking you. What? I pick it up. I know it's drugs. I mean, why isn't it Cougar hands or, you know, 10,000 bearer bonds? Well, that's one where if it were only weight, if that's all we had, then I don't think we'd bring this case. But when you add it again, you have to consider all of the evidence in deciding whether the jury was reasonable. When you've given the fact that, number one, it is drugs, number two, it's coming from a source city, number three, the other guy, who has the same conversations and is paid to do the exact same thing, reaches this conclusion, a jury can infer that a reasonable person would know it, just like Dea Dia's knew it. Break out any one of these facts. I don't think I'll give up on the size of the transaction. I think that's a huge fact here. But sure, you could pull out these facts, and that's why our jobs are not going to go away. I don't expect to be out of the appellate business when this case is decided. But your tension in the law, I know you've heard a little bit about it, is it a tension in the results or the tension in the analysis? Aren't you or the tension you feel is the tension between those cases that say if there is just as consistent inferences, the tie should go to the defendant under that circumstance and therefore looking beyond the inferences drawn by the jury, and therefore there's a tension between the aia felice language and the language in Wexler and some of the other cases. And is that where the tension is? Yes. I think that's very helpful, Judge Schwartz, to say there's a tension in the analysis. And the fact is, as you all know, ours is a precedential system. District courts have to look to the precedent of this court and try to apply it. And when you try to apply a Doe-Wilburn-Cartwright in cases like that, you wind up with intensive, difficult appeals like Berea and Cartwright in this case. Could you restate the clarification that you're seeking in our jurisprudence? The clarification, Your Honor, is that the Jackson v. Virginia standard of review applies to this type of case as to all others, and that all reasonable inferences must be accepted to support the verdict, that if there are equally reasonable inferences supporting a not guilty verdict, it is irrelevant. The question is, is there a reasonable inference supporting guilt that a rational jury could accept, or are we dealing with a case, as the Supreme Court said, of bare irrationality? Thank you. Thank you, sir. Judge Rendell, any questions? You've lost her. Did we lose her? About two minutes ago. I wonder why we had that double display. Can you try to get Judge Rendell back in? If she has any questions, she can get to you on rebuttal. Hold on, Mr. Warren, until we get our missing colleague back. He looks kind of like the United Nations with those kinds of chairs there. This is a new one for me, Judge. I feel like the tennis ball at Wibbleton. He does kind of look like Specter. Or Zowie. Zowie. Zowie is before your time, I guess. Thank you. You didn't have anything to do with this, did you? I didn't. I thought Judge Rendell's questions were helpful. No. Can you hear us, Mitch? Yes, I can. Can you hear me? We can, yeah. Yeah, we had a power outage. Okay. May it please the court. My name is Christopher Warren. I represent the appellee in this case, Richard Caraballo Rodriguez. I would like to start out with what I think is the point that a lot of you guys have been raising, and is the government really quibbling here with application of the standard of review that has been correctly stated in every one of the cases that they don't like? The court quotes from Jackson v. Virginia. The court states the standard. There is no opinion that they have cited where the court has incorrectly articulated the standard of review. What you have here is a situation where they just don't like the way that standard was applied in some cases. That's what this whole thing is about. They look at cases that they disagree with and that they have problems with, and they think it's because there's some de facto, direct evidence, unspoken rule of law that is applied, and that this court has been misapplying Jackson v. Virginia since Wexler was decided in 1988, that the court has just missed it for a quarter of a century. I suggest to you that's ludicrous. What we have here is a situation where the correct standard of review is there. They just disagree with its application in specific cases. I disagree with its application in specific cases. To the extent there is tension, whenever you have reasonable minds looking at the same issue, you're going to reach different positions. That's the nature of this type of review. But just because there's tension does not necessarily mean that there is a de facto, direct evidence requirement in this court's jurisprudence. There is no requirement or no need for this court to say, okay, it's about time we start applying Jackson v. Virginia. The court has been applying it correctly for over, you know, decades. So this case does not need a statement from this court that Jackson v. Virginia applies. Now, just quickly, Judge McKee, the indictment in this case, did allege cocaine. So that's specifically the object there. We did argue that my guy thought it was money. I tried the case. His argument was that he thought he was taking money in there. We based that on statements that Dea Diaz had made during debriefings. This is in volume three of the appendix at page 730. This was debriefings where, when he had been interviewed, he stated that he had been recruited to transport what he believed was large amounts of undetermined U.S. currency to the New York, New Jersey area. So that's at least what he told the government during debriefings. Obviously, he said something different at trial. But that's what we were arguing. And one thing I really want to hit, the government takes the position that no defense attorney ever gets up here in front of an attorney and says, my guy thought it was counterfeit jewelry. My guy thought it was this. My guy thought it was that. The government never once argued to the jury in this case the inference that it is pressing upon this court to sustain the burden. The government never stood up in closing argument and said, ladies and gentlemen of the jury, he's a trusted member of the conspiracy, and because he's a trusted member of the conspiracy, he had to know it was drugs. They never argue it in their post-trial submissions to the district court, and it was the district court that sui sponte raised the issue and then based on Idaho and some other cases decided that an inference of being a trusted member of the conspiracy is not sufficient to show that he knew it was drugs as opposed to some other form of contraband. So what you're dealing with here, an inference that the government raises on appeal. Now, I understand I've argued in my brief that, you know, they raised it for the first time on appeal. But if this inference was so compelling, how can the jury draw an inference the government did not even invite it to draw at trial? That's what they're doing up here. And they're claiming that because the jury rationally could have come to this conclusion based on an argument they didn't make, this court needs to, I don't begin to know what you're supposed to do with the cases they don't like. Is there supposed to be a footnote where we say, well, we disavow Thomas? We disavow the result? We disavow the application of the standard review? I really don't know what the government wants you to do other than simply take away the cases that are favorable to the defense and unfavorable to them. That is what this whole thing is about. And I am ready to take any questions which I'm sure the court might want to take. Based on the evidence that there were several phone calls to the same person in Puerto Rico, there were phone calls when he arrived at the Philadelphia airport. He picked, he arrived, he came on the plane without any luggage at all. And then he picks up these two suitcases, puts them in a van that apparently he had never seen. Why couldn't the jury totally reject your defense? Because, for starters, the telephone calls were made, there was contact from the same telephone number, okay? What the government is really arguing is some sort of extrapolated knowledge argument. You can take, Dea Diaz was told this, Dea Diaz was promised this, Dea Diaz, depending on which portion of his testimony you want to believe. Well, it did have the wolf of blindness instruction, and it could have certainly concluded from that evidence, could it not, that there was a high probability that he knew what was in the suitcases? I don't believe so, Your Honor, and here's the reason why. We don't even know, in this case, the government didn't even put in evidence that the guy had flown to the United States before. Not one piece of evidence showed that he had ever been to the United States before, had ever left Puerto Rico, had ever gotten on an airplane. So here's the evidence, which, in my view, they established. Now, an inference has to be based on an objective fact. They showed that he had contact with a telephone number that was the same telephone number that Dea Diaz had contact with. There was one trip that was supposed to take place on the 26th and didn't take place, and then a week later he had contact with that phone number. Isn't that an argument only that is made to a jury? In the jury, in this case, you had a very clear instruction from the presiding judge, and the word cocaine was used eight times, that you had to have a conspiracy for the possession and distribution of a controlled substance, in this case cocaine, and you must find that it was cocaine beyond a reasonable doubt, as it says on page 159 of the appendix. The jury, having made that determination, having figured out whatever inferences it wanted to accept, why are we then to look over that and say, you know what, those 12 people were wrong and we're the 13th juror and we got it right? I don't suggest that this court is the 13th juror. I suggest what the court is doing is actually applying the standard of review that it's supposed to apply. I think the problem in these cases is that everybody assumes that the guy had to know. The jury assumes that the guy had to know. The problem is a court cannot make that assumption. But you're putting the rabbit in the hat, aren't you, by saying the jury assumes. Why can't the jury infer? Why can't the jury say, and in fact take Dea Diaz's experience into account as a part of the mix? You seem to kind of give that to the back of your hand. But if he was told these things, what's irrational about the jury saying, we believe that Caraballo Rodriguez was also told those things? And if you're going to get on a plane in Puerto Rico with a heavy suitcase and give it to people you don't know, we think it's probably, yeah, it's a controlled substance. Is that assumption or is that rational reasoning? If there is no underlying objective fact that will allow you to draw an inference that he knew it was cocaine as opposed to some other form of contraband, money that I argued here. It doesn't have to be cocaine, right? No, it could be a controlled substance. Any controlled substance. I agree with that. Any controlled substance. So if you've got a co-conspirator's testimony about the things that that co-conspirator was told, and you've got all the surrounding information that Mr. Zosmer's pointed out in this brief, how is it irrational for a jury to say, you know what? We think he was probably told the same stuff. He knew that was drugs.  And Deideas testified that he was not told that it was drugs. Okay? Deideas, and I quote from it in my brief, the exact conversation is Deideas says that he's basically called out of the blue and he is not told that it's drugs, that his name had been given to whoever this fellow is, and there's nothing that Deideas claims that he was told. If you want to extrapolate what was told to Deideas and then use that to draw an inference as to my client's knowledge, well, let's look at what Deideas was told. Deideas was not told that it was drugs. He got up at a change of plea hearing, denied that he knew it was drugs until they walked him through it. He testified at trial on multiple occasions. He didn't know it was drugs. He wasn't told it was drugs. So there's nothing in what was told to Deideas that would support an inference that my guy was told it was drugs. None of the information about, look, you'll be contacted here, pick this thing up. I mean, there was nothing in the interaction Deideas had with the people that would rationally lead one to believe I'm carrying contraband and, in fact, I'm almost certainly carrying drugs. What Deideas said, based solely on the testimony that they got from Deideas at trial, there is nothing in there that allowed him to conclude that it was drugs. What he said was, based on the weight and his common sense and the amount of money he was being paid, that at one point he said he thought it was drugs. Later on he said that he didn't know it was drugs until they opened it up to the police barracks. But if Deideas isn't armed with enough information to come to the conclusion it's drugs until he pulls it off the carousel and one other thing about Deideas. That's different, though, because you said at one point he said he thought it was drugs. He may have backed off of that. Well, what he initially says, Judge, is he initially says that I was not told it was drugs. I didn't know it was drugs until they had me at the Belmont police barracks and they opened the suitcases on the table and I saw it was drugs. Later on he says, well, when I lifted the suitcases off the carousel, they were heavy, I was being paid a large sum of money, and from that I concluded it was drugs. Why isn't that enough? Why can't the, why can't the, let's take up some of that. Joe, hold on. I'm sorry. Why isn't that enough, especially with Basowitz's testimony? Why isn't that enough? Because Deideas testified also that he had done this a number of times before he came to that realization. The evidence in this case, or with respect to my client, for all we know this was the very first time he'd ever been in the United States or ever gotten on a plane. You don't have the additional facts with respect to my client that you have with respect to Deideas. Deideas is under your rule as long as. . . No, no. Go ahead and then Judge Roberts. Go ahead. So I have two things. Number one, is your argument that if all reasonable inferences on your side are in equipoise with the reasonable inferences that Mr. Zausmer has argued to us, that in that instance the jury can't find your client guilty and a reviewing court should be. . . No. Okay. So you're saying that the reasonable inferences that can be drawn from these set of facts are below what my colleagues and I have referred to as the threshold. What I'm saying is whatever inference you draw. . . Well, if the evidence is in equipoise, I agree with the law that says that that's not sufficient to set aside a conviction, okay? But what the government keeps glossing over is whatever inference you draw has to show that he has knowledge of the specific object charged. But why isn't it reasonable for the jury to infer that a bag containing whatever it is, $5 million worth or 2.5, each bag, $2.5 million worth of cocaine that they infer from that fact that Mr. Carballo Rodriguez must have known? Why is that an unreasonable inference? Because if that's a reasonable inference, then you're going to have knowledge of whatever object is in a suitcase even if you don't. To me, that's more of a willful blindness type issue. But remember, the jury can take that into account with the expert testimony that's been presented and also with what the ideas has said. Taking all those facts into account, why isn't it a reasonable inference to say no? Because I don't think it's reasonable to infer that he knew it was drugs when you don't really have any objective facts which would support that specific inference. That's the problem I have with it. Are you really talking about direct evidence as opposed to objective facts? No, I don't think you need direct evidence at all. I think you could have plenty of circumstantial evidence. I think I've cited cases where this Court has. Do you think it was wrongly decided? No. No, I don't think it was wrongly decided. I believe that it was correctly decided. All it stands, in my opinion, is for the unremarkable proposition that whatever evidence you present and whatever inferences you want to draw show that the guy knew it was drugs as opposed to some other form of contraband. You just heard another question. They're not going to know. I'm concerned the other side of the pole here. I'm concerned about the limiting principle with the government. I'm concerned about it on your side because you seem to be telling us that as long as drug kingpins assiduously avoid telling their mules what they're carrying, then they can't be convicted sufficiently in a conspiracy case. I'm not saying that at all. They could be convicted, in my view, under a willful blindness theory. But to convict under willful blindness. Well, okay, then if the willful blindness instruction is okay, we've really opened the field in a very plenary way to the jury, haven't we? And it's up to the jury. It's almost unreviewable at that point. Once the jury can, in their collective judgment, decide whether the person was willfully blind or not. Yeah, but there's got to be evidence from which the jury can conclude beyond a reasonable doubt that the guy closed his eyes, consciously tried to avoid it. You've got to look at some evidence from which that conclusion could be wrong. The evidence is the quantity of the cocaine, the amount of money he was paid. He's traveling in a very irregular way. He's from a drug-sourced country. I mean, that's all evidence. Well, there's no evidence as to the amount of money he was paid. There's no evidence that he had ever flown on an airplane before. There's no evidence that he knew that there was anything wrong with getting suitcases under these circumstances. There's nothing really peculiar about somebody on their virgin voyage to fly with $33 in their pocket without any baggage? I mean, isn't that highly peculiar? He may be able to show up at baggage claim. I mean, the mere fact that you showed up at baggage claim. Yeah. If he had been, if there was evidence. I was going to say, isn't your statement that you just made evidence from which a jury would find beyond a reasonable doubt, isn't that exactly the wrong standard? Our standard is that any rational juror, that no rational juror would convict on these facts, drawing inferences. I think what you're saying is we're acting again as 13th jurors, Judge Ambrose said. And I think that's maybe the problem with the cases we have required. And we said in Berea, we've required some additional piece of evidence. And isn't that exactly what you are saying? There were additional pieces of evidence necessary. Whereas we're supposed to say no, you know, did, would no rational juror be able to conclude on these facts that this had occurred and there was, he was willfully blind. What I'm saying, Your Honor, is you cannot draw an inference based on an assumption. All right. They're asking, they're asking this court to infer a great deal. You don't know what was said. I have no problem with finding willful blindness if there is evidence in front of a jury which would allow them to rationally reach that conclusion. Well, Dea Diaz said it was common sense that when you pick up the suitcase and it's so heavy that it had drugs in it. Why couldn't you infer that Caraballo Rodriguez has just as much common sense as Dea Diaz has? I don't believe that it's common sense that you immediately conclude it's drugs based on the weight of the suitcase. I don't believe that's a rational inference. I don't believe that. The question is not, however, what you believe. The question is, is it irrational for a jury to believe it? You said there's no evidence what he was paid. Dea Diaz said how much he was paid. Why couldn't a rational jury say we've got two people, they're operating with the same folks, they're making phone calls to the same people, they're carrying the same stuff. It's okay for us to believe that they're getting paid the same amount, they got the same information, they have the same level of common sense, and therefore we believe it. Because you're homogenizing all people under those circumstances. You're assuming that Caraballo Rodriguez is identical to Dea Diaz. Isn't the foundation of where we have to start this whole process the totality of the circumstances? That's correct. Okay. And you put all of these circumstances together. You're saying that no rational juror could make the inferences that Caraballo Rodriguez knew that drugs were in those suitcases. That's exactly what I'm saying, Your Honor. I'm saying that based on the evidence the government presented in this case, that a rational jury could not conclude beyond a reasonable doubt that he knew it was cocaine. Well, you have to say better you lose. But how consistent is that with the jury's application of common sense? And I assume they still use common sense back in the trial. Well, the jury certainly used common sense. I agree with that, Your Honor. But the standard of review is to make sure that that common sense doesn't go into speculation, assumption, and surmise. And that's the fine line the court has to walk. It's very hard to travel nowadays without being in an airport and hearing the public service announcements about not accepting packages or containers from other people. If you see something standing idly by, report it. Don't accept luggage or anything from other people. And jurors don't leave their common sense at the door. And they know that you should not pick up suitcases that don't belong to you. Judge and I would agree. Let's assume hypothetically that there was evidence that Caraballo Rodriguez had heard that. Does that prove beyond a reasonable doubt he knew it was cocaine or a controlled substance or some other form of contraband? What role does the expert testimony take in all of this? If you go through the iteration of facts that all of my colleagues have put before you and that you've set forth as well, and you add on top of that the expert testimony, as we look at what the jury inferred, disregard the fact that they took the expert testimony into account. If they were in equipoise, doesn't the expert testimony kick it over? Well, Judge, I believe that Judge Ruth, in her opinion, adequately deals with this. She dealt with it, but how is it adequate? How can you just say, well, the expert witness is not going to tip the balance? Why not? Why would a witness tip the balance as long as the jury accepts what that witness said? Well, because expert testimony, which goes to a defendant's mental state, is prohibited by the rules of evidence to begin with. That's what we're talking about here. But we're talking about the evidence that was admitted. It was admitted, correct? So as long as it's admitted, the jury can consider it. How can a judge, after the fact, say, I'm not going to allow that to tip the balance? The jury had it, and the jury was told they could use it. How can you do that as a trial court judge? As Judge Ruth relied upon the Second Circuit's opinion, I've cited my brief. Boys and Alt, where the Second Circuit specifically considered this issue, and I quote here, to be sure, Agent Sullivan's expert conclusions unambiguously linked the defendant to street-level distribution of cocaine. However, as discussed above, such conclusions are entitled to little weight in our sufficiency analysis. So what the Second Circuit is saying there is if your evidence of culpable knowledge is insufficient, you can't plug the gap with expert testimony. Is it unreasonable to conclude, if you pick up not one but two suitcases from an airport carousel, that they are your suitcases and you know what's inside those two suitcases? Is it unreasonable to conclude that? In the absence of evidence from which you conclude, beyond a reasonable doubt, that he knew it was drugs as opposed to some other form of contraband, I think the inference that he had to know is unreasonable. Let me ask you a question about Claxton, which Mr. Zosma referred to a couple of times. Do you agree with Judge Cowen's dissent in that case? In the Claxton case? Right. I believe Claxton is an example where reasonable minds can differ on the application of the correct statement of law to the particular facts of the case. All right. So then would you agree that if reasonable minds can differ, you've got to go with the jury's verdict? If the jury's verdict, if the inference, again, we're dealing all with circumstantial evidence, okay, and if the jury's verdicts and the inferences which have to be drawn to support that verdict are rational and reasonable and supported by evidence, not speculation, assumptions, or what somebody else thought, believed, then, of course, you have to accept the verdict. So I guess what I'm asking is, isn't there a problem with our standard of review if you've got, and we've got high respect for our colleague, Judge Cowen, if you've got a thoughtful judge like Judge Cowen trying to apply the same standard we're applying and coming out and saying, no, there's got to be something more? Isn't that why we're sitting here in bank, that thoughtful judges like Judge Roof and Judge Cowen trying to apply our case law are in a circumstance where you're acknowledging that reasonable minds could disagree and saying, no, our law requires us to reverse? Isn't that a problem in the law? Well, not in my view. That's a problem in the application of the law to a particular set of facts. To me, what the government's doing is quibbling over the results. Judge Cowen looked at the same set of facts and came to a different conclusion. The majority came to a different conclusion. Claxton, I think there was evidence in there that the defendant was a member of the conspiracy. That was the evidence which I believe was dispositive in Claxton. I think, again, reasonable minds can differ on the application of the standard, and I don't know what the government wants this court to do, disavow the results in the cases it doesn't like. I suggest that's what they're asking you to do. Well, Judge Cowen was suggesting that it's an equipoise. I mean, that's what the opinion alludes to, that he thinks that he thought, I should say, that the evidence equally supports the inference that Claxton had knowledge of drugs as it does an inference that Claxton had knowledge that the conspiracy's object was weapons or some other contraband. And I thought that you said earlier that if it's an equipoise, you lose. That's correct. I think the Claxton case, and what I think Judge Cowen was not dealing with, is you had testimony in that case that the defendant was a member of the conspiracy. And that testimony is what put it in line with Borea as opposed to the other cases. That, in my view, was the extra piece of evidence that exempted Claxton from the holdings of Wexler and Idaho. It was similar to Borea. Wexler, though, it all goes back to the comment in Wexler, doesn't it, that it's just as reasonable to assume that it could be some other kind of contraband? That just as reasonable kind of a comment, in our case law, seems to have taken the court off on several occasions in weighing inferences. Well, what the court is looking for is whether or not the inference the government wants the court or the jury to draw. The specific inference that he knew it was drugs as opposed to some other form of contraband is supported by the objective facts. I guess your comment seems to me to go right to the heart of it when you say there's something extra. Isn't that something extra, the concern that the government has raised, that you have changed the standard in drug conspiracies? You're not satisfied with ordinary circumstantial evidence. You're looking for something extra. It starts to smell like direct evidence, but you're looking for something more, and that's just not Jackson v. Virginia. You've gotten off the path. So what they seem to be saying is, go back and say, no, Jackson v. Virginia, it applies everywhere. There isn't something extra. What's wrong with that as a statement of law? This court has applied Wexler and Idawo to wholly circumstantial cases, which I cited in my supplemental brief, and upheld convictions. It's not a standard of review that has trouble. It's the application of that standard to results the government disagrees with. Well, could you cut off the last part of that? I think Mr. Sarsour would agree with you. The problem here does seem to be the application. That's why I said earlier that it seems like what we say we're doing and what we end up doing, in some cases, are two very different things, and we only seem to be doing it in drug cases. There does seem to be a different standard of review or conspiracy to distribute drugs is involved than in some other kind of case, counterfeiting or wire fraud or that kind of thing. The reason I went through this, I actually shepherdized Wexler and read every case in which it had been cited. It has been cited in the Corey Kemp case where he was up there claiming. It's been cited in other cases. Now, it has not been sufficient, and generally it's not been sufficient because the evidence was found adequate in those cases to show that Kemp knew that he was involved in a conspiracy to, I forget what it was, steal from the bank or whatever it was. It's generally because the evidence presented by the government in that type of case established beyond a reasonable doubt that the defendant had conspired to commit whatever the object of offense was charged in the indictment. So you're not saying that the law is, if there are a basis of facts that have been adduced and that there are just as consistent inferences that can be drawn, consistent with it being a drug conspiracy versus some other conspiracy, that that is not the test that applies? No, I think it would be incorrect for that court to apply that test. And I don't think this court does apply that test. I defy my colleague here to cite you an opinion where this court has written the evidence is an equipoise and we're going to reverse the guy's conviction. I don't believe that opinion exists. Well, not wordspoken, but again, what we do seems to suggest that that's the analysis. All the court is doing is looking for evidence from which a rational inference can be drawn that the defendant knew it was drugs as opposed to some other form of contraband. That's what the government has to prove. That's all the court is looking for. The court is saying, all right, government, show me. Show me the piece of evidence. In this case, they say, well, it was a heavy suitcase. So they're asking the court to infer that he had to know it was drugs because it was a suitcase. The problem is that 12 people heard the evidence and concluded that he knew that there were drugs inside those suitcases. I mean, this is a very deferential standard. And I understand. And that deferential standard has been applied to cases in which convictions have been upheld and to cases in which convictions have been settled. The jury concluded he was willfully blind. Right. Yeah, the jury, they were charged with willfully blind and they came back with willful blindness. And where's the fallacy in that argument? Why couldn't the jury have believed the willful blindness charge? Because there was insufficient evidence as to what happened in Puerto Rico. These are his suitcases. Well, no, there's no evidence that it was his suitcases. There's evidence that he briefly, I mean, based on the evidence, he briefly lifts them off the carousel and wheels them out to a parking lot. So his contact with the suitcases was very brief. Well, he did more than that. He put them inside a SUV. No, Your Honor, the actual testimony was nobody actually saw him put them in the SUV. He had a conversation with Dea Diaz at the luggage carousel. I'm sorry? He had a conversation with Dea Diaz at the luggage carousel. And Dea Diaz testified that there was nothing conspiratorial discussed. In fact, Dea Diaz testified that he never even knew who Caraballo Rodriguez was, that Caraballo Rodriguez hopped in the back of the car, and until that moment, Dea Diaz had no idea that Caraballo Rodriguez was doing the same thing. He had a discussion with Cordero at the carousel. It still happens that Cordero had the same discussion with Dea Diaz. I do not. What I recall the testimony actually being is that Caraballo Rodriguez is standing there, Dea Diaz and Cordero are having a discussion, and Cordero and Dea Diaz go walking off. But even if they had a discussion, that doesn't show you that that discussion meant that it was drugs as opposed to some other form of contraband? Just another piece of evidence in which you could infer they were all acting together. Judge, I don't. I emphasize the totality of the circumstance, but you want to eliminate all these little pieces of evidence in which a jury can make an inference. I agree, Judge. The question is whether or not the facts on which the government is asking that the inference is to be drawn support the inference that he knew it was drugs. It's the totality of those facts. I understand, Judge. I just don't believe that the totality of the facts. I do not believe that Cordero and Caraballo Rodriguez are speaking. I believe that it's Cordero and Dea Diaz that are speaking. Cordero and Dea Diaz walk out together. That is what I believe the evidence is. Cordero and Dea Diaz try to pull the chips out of their cell phone. There's evidence of consciousness and guilt with respect to those other two that is not present with respect to Caraballo Rodriguez. I do not believe that the evidence, and I'm tired of having me say I don't believe, I do not believe that the evidence is sufficient to support the inference he knew it was drugs. Thank you. Judge Bindel, anything else you want to add? No, I'm fine. Thank you. Thank you very much. I'd like to make a very quick point. Before I do, we lost Judge Bindel at the end. Did you have anything you wanted to ask him at the end of his initial presentation? No. Okay. I'm sorry. Go ahead. Oh, no. Thank you. Thank you. I'd just like to make a very quick point about the expert testimony and then wrap up on the main issue here. Mr. Warren said that the expert testimony was inadmissible, and that is not correct. Watson and Davis say you can put in evidence of the fact that conduct is consistent with intentional drug trafficking, leaving it to the jury to decide whether it should draw the inference that the person in this case had that same intent. The Second Circuit has said or suggested that expert testimony should not be allowed to tip the balance. That's never been accepted by any other circuit, and it's certainly inconsistent with the precedent of this Court, which we believe should be continued. With regard to the cases. Mr. Warren is saying that the First, the Second, the Sixth, the Eighth, and the Ninth have agreed with us as to what the standard is. And that's not correct, Your Honor. The Sixth Circuit, yes. The Sliwo case is consistent with Wexler. The other cases which are cited, a couple of them, I believe the Eighth and Ninth Circuit, are cases in which the courts found that the defendant didn't participate at all. He was standing there, but he did nothing. You're not dealing with the knowledge factor. You're dealing with the participation factor of somebody who just came along for a ride and did absolutely nothing. The cases from the First Circuit and the Second Circuit that he cites are nowhere near the Wexler and Edogu situation. They are situations in which there was evidence that the people were just doing lawful things on one occasion and happened to be supporting, you know, the First Circuit case, the cocaine was hidden inside paper pallets. These were commercial truck drivers who went to a commercial port who had customs authorizations. Everything was ordinary. It's really only the Sixth Circuit and that Sliwo case that has ever accepted it. And that brings me to the final point that I would like to make, which is that opinions do matter. Even if this Court has said over and over there's no requirement for direct evidence, the problem has been, and we just saw it in my friend's argument, the problem is when you try to explain those cases, you inevitably have to say we need some more evidence. And if that's not direct evidence, you're just left scratching your head as to what it could be. Of course, this Court, the judges of this Court, spent a tremendous amount of effort writing up precedential opinions for a reason, to guide district courts. And I can say, based on my experience, that many of these appeals that we've litigated over the years, I respectfully think, and you'll tell me if I'm right or wrong, would not have existed if not for this Court's Wexler line of cases. If not for IDOWU, where it says the fact that somebody's trusted doesn't matter, the fact that it might be computer chips, you wouldn't have Judge Roof have the need to write this 40-page opinion and us bring this appeal. And that's the reason we are so thankful to have the opportunity to address this in bank and get a clarification. In IDOWU, there was a dissent, a dissent by Judge Stapleton. And Judge Stapleton said he didn't agree with this notion that you can't infer that a trusted person doesn't know what's going on. He said, quote, given the inherent risk, it is an extremely rare occurrence when a person commits himself to facilitating a large illicit transaction without ascertaining the objective to be achieved. Judge Stapleton is a reasonable person. These jurors were reasonable people. And as long as their decision was not barely irrational, it must be affirmed on appeal. Thank you, Your Honor, very much. Thank you. Excellent argument.